IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MAURICE S. VAUGHN and MO VAUGHN :
INVESTMENTS LLC, :
:
      Plaintiff, :
:
v. : Case No. C2: 2:09 CV 00097
:
RASHONDA KAY MARSHALL : JUDGE ALGENON L. MARBLEY
: Magistrate Judge Abel
      Defendant. :

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Defendant RaShonda Kay Marshall's ("Marshall") Motion to Stay This Case Pending Arbitration (doc. no. 15). Marshall asks this Court to stay Plaintiffs Maurice S. Vaughn's ("Vaughn") and Mo Vaughn Investments LLC's ("Vaughn Investments") claims against her in favor of an arbitration proceeding that Plaintiffs have commenced against Marshall's business, RKM Business Services Inc. ("RKM Business"). For the reasons set forth below, this Court **GRANTS** Marshall's Motion.

**II. BACKGROUND**

**A. The Parties**

Vaughn, a Florida resident, is a former professional baseball player. He played professionally from 1991 to 2003. Vaughn Investments is a limited liability company that Vaughn controls. Marshall is an Ohio resident and the sole member of RKM Business, through which she offers financial management services.

## B. The Agreement

On May 25, 2004, RKM Business entered into a Business Services Agreement (the "Agreement") with Vaughn and Vaughn Investments under which RKM Business agreed to provide financial and business management services.[1] The Agreement provides:

> In the event any dispute is not resolved or settled by the parties that arises hereunder, the parties shall submit the same to arbitration in accordance with the rules of the American Arbitration Association. All arbitrations will be held in the City of Columbus in the State of Ohio. The parties agree that any judgment or decision rendered shall be binding and enforceable in any court in Ohio having jurisdiction. The prevailing party shall be entitled to reimbursement of all costs incurred, including reasonable attorney fees, in connection with said arbitration.

(Agreement § 8.4.)

## C. The Power of Attorney

The Agreement also provided a Grant of Limited Power of Attorney:

> Client hereby appoints RKM as Client's true and lawful limited attorney-in-fact for the duration of this Agreement. RKM is empowered as Client's limited attorney-in-fact for Client . . . Client hereby ratifies and affirms all acts performed by RKM by virtue of this power of attorney. In order to allow RKM to provide the services contemplated by this Agreement, simultaneously with the execution of this Agreement, Client shall execute and deliver to RKM a Durable Limited Power of Attorney.

(Agreement § 6.1.)

On the same day that the Agreement was signed, Vaughn executed a Durable General Power of Attorney on a New York Statutory Short Form (the "Power of Attorney"), authorizing Marshall to engage in real estate, banking, and other related transactions on his behalf and for his business. He further authorized her to handle his tax matters. The Power of Attorney does not

---

[1]Marshall is the sole member of RKM Business.

contain any arbitration provision. For the next three years and seven months, Vaughn deposited substantially all of his income in bank accounts under Marshall's control.

### D. Termination of the Agreement and the Power of Attorney

In 2008, Vaughn decided that he no longer wished to use the services of RKM Business or Marshall, preferring to manage his financial affairs directly. In late December, Vaughn sent a notice terminating both the Agreement as well as the Power of Attorney. He demanded a return of all financial records. At the same time, Vaughn also terminated the services of the outside accountants that Marshall had retained to prepare his taxes for 2004 through 2008.

Marshall refused to return all of Vaughn's financial records, proffering instead a Statement of Account for 2008. Plaintiffs allege that they soon discovered that Marshall had diverted substantial funds from their bank accounts to pay RKM Business and Marshall.

On February 6, 2009, Plaintiffs filed this suit against Marshall for claims arising from her alleged misuse of the Power of Attorney. Plaintiffs assert the following claims for relief: breach of fiduciary duty, unjust enrichment, constructive trust, actual fraud, constructive fraud, conversion, accounting, and negligent misrepresentation. On February 17, 2009, Plaintiffs commenced arbitration against RKM Business, alleging a breach of contract against RKM Business (the "Arbitration").

## III. LAW AND ANALYSIS

Marshall contends that the facts and circumstances in this case alleged against her while she worked for RKM Business are the same facts and circumstances at issue in the arbitration against RKM Business. She contends that the only reason the claims are proceeding in two different forums is because of the Agreement's mandatory arbitration clause. She asserts it will

be an inefficient and duplicative use of time and effort for this Court and the litigants if the parties are required to proceed in two forums at once, particularly with the risk of inconsistent outcomes between the two. Therefore, she requests this Court stay the case pending arbitration.

When a district court has jurisdiction over a case, the court has the power to order a stay in the exercise of its own discretion. *Geo Vantage of Ohio, LLC v. Geovantage, Inc.*, No. 2:05-CV-1145, 2006 WL 2583379, at *12 (S.D. Ohio Sept. 6, 2006) (citing *Jewell v. Davies*, 192 F.2d 670, 672-73 (6th Cir. 1951)). A discretionary stay can be issued to stay third party litigation involving common questions of fact within the scope of an arbitration agreement to which the third party is not a signatory. *Asahi Glass Co., Ltd. v. Toledo Eng'g Co., Inc.*, 262 F. Supp.2d 839, 844 (N.D. Ohio 2003) (citing *AgGrow Oils LLC v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir. 2001)). A court, however, "must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). The movant for a stay bears the heavy burden of showing a discretionary stay is necessary, and the stay should not prejudice the non-moving litigant unduly. *Asahi Glass,* 262 F. Supp.2d at 845 (citing *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991)); *see also Ohio Envtl. Council*, 565 F.3d at 396 (finding that if there is even a "fair possibility" that the stay will harm the non-moving litigant, the movant must then "make out a clear case of hardship or inequity in being required to go forward").

### A. Necessity of Stay

Marshall must first show that the discretionary stay is necessary. *Asahi Glass,* 262 F. Supp.2d at 845; *see also Ohio Envtl. Council*, 565 F.2d at 396 (finding the movant must show a

pressing need for such delay). Marshall contends that a stay is necessary because the facts and circumstances surrounding this action are the same as those in the Arbitration. She argues that the damages sought are the same, and that any claims against RKM Business are intertwined with her individually.

Plaintiffs' claims against RKM Business in the Arbitration are based on a breach of the Agreement. Plaintiffs' claims against Marshall in this case arise under the Power of Attorney. The Power of Attorney, however, was not executed in a vacuum without relation to the Agreement, but was executed because of the Agreement. The Agreement provided a Grant of Limited Power of Attorney:

> Client hereby appoints RKM as Client's true and lawful limited attorney-in-fact for the duration of this Agreement. RKM is empowered as Client's limited attorney-in-fact for Client . . . Client hereby ratifies and affirms all acts performed by RKM by virtue of this power of attorney. In order to allow RKM to provide the services contemplated by this Agreement, simultaneously with the execution of this Agreement, Client shall execute and deliver to RKM a Durable Limited Power of Attorney.

(Agreement § 6.1.) Due to this provision, therefore, on the same day that the Agreement was signed, Vaughn executed the Power of Attorney, authorizing Marshall, RKM's sole member, to handle his financial matters.

In Plaintiffs' Complaint, they contend that Marshall "failed to pay income taxes that plaintiffs owed, diverting to herself and others, funds that should have ben used pay taxes." (Complaint ¶ 10.) They also contend that Marshall, "used the Power of Attorney to pay her company fraudulent fees in excess of $500,000, to pay employees who worked solely for her, and even to pay large FedEx bills unrelated to Mr. Vaughn's affairs." (*Id.*) In a February 13, 2009 letter submitted to RKM Business, Plaintiffs explained the breaches that they were going to

pursue in Arbitration as follows: "Among other things, RKM has used the monies entrusted to it by its Clients to pay expenses that were not chargeable to these Clients, charged them with inappropriate and excessive fees, including annual management fees in the amount of $300,000, and failed to assure timely payments of their federal and state taxes."

In Plaintiffs' Complaint, they also contend that Marshall "took reimbursement to pay for travel by Mr. Vaughn's parents, when in fact Mr. Vaughn paid these expenses himself. . . . [and] diverted the sum of $89,000 from Mr. Vaughn's bank account in February 2008 for a payment that benefitted solely herself." (Complaint ¶ 10.) In the February 13, 2009 letter, Plaintiffs contend that RKM Business made an inappropriate "payment to RKM of $89,000 on 2/26/08" and that RKM made inappropriate "charges for travel by Mr. Vaughn's parents."

Finally, in Plaintiffs' Complaint, they contend that Marshall "has refused to turn over plaintiffs' records." (Complaint ¶ 11.) In the February 13, 2009 letter, however, Plaintiffs contend that "RKM has failed to timely return to the Clients their business records."

The Second Circuit ruled in *Sierra* that a discretionary stay is appropriate where the pending proceeding is in arbitration, during which issues involved in the case may be determined. 937 F.2d at 750. Judge Sargus of the Southern District of Ohio ruled in *Geo Vantage* that a stay is necessary where the issues are all related to the interpretation of an agreement and the question of whether or not it has been breached. *See* 2006 WL 2583379 at *12.

It is apparent from the allegations in the Complaint and the allegations in the February 13, 2009 letter that Plaintiffs are alleging some of the same wrongdoings against Marshall in this litigation and RKM Business in the Arbitration. They are also seeking compensation for these same alleged wrongdoings. As in *Sierra*, there are issues in this case that may be determined in

the pending arbitration, such as: were monies used to pay expenses that were not chargeable to Plaintiffs, were Plaintiffs charged with inappropriate and excessive fees, was there a failure to timely pay Plaintiffs' taxes, and was there a failure to timely return Plaintiffs' records. *See also Patnik v. Citicorp Bank Trust FSB*, 412 F. Supp.2d 753, 762 (N.D. Ohio 2005) (citing *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002)) ("A stay is justified when a lawsuit against a nonsignatory depends upon the same facts and is inherently inseparable from the arbitrable claims."). And as in *Geo Vantage*, the issues in both the Arbitration and in this litigation are related to the interpretation of the Agreement and the question of whether or not it has been breached, as the Agreement is what required the Power of Attorney and the Agreement itself sets forth power of attorney language. Furthermore, the decision with respect to Plaintiffs' breach of contract claim against RKM Business would significantly affect Marshall's potential for liability. *See Geo Vantage*, 2006 WL 2583379 at *12.[2]

Therefore, because the claims against RKM Business are intertwined with the claims against Marshall, and because some of the damages sought are the same, it would be an inefficient and duplicative use of time and effort for this Court and the litigants if the parties are required to proceed in two forums at once. *See also Patnik*, 412 F. Supp.2d at 762 (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (finding a court should consider in deciding whether to issue a stay "whether an independent action against the nonsignatories would involve significant expense and inconvenience"). To save the parties and the Court from

---

[2] Even if issues will not be resolved through arbitration, a stay is still appropriate if the arbitration will "greatly facilitate the resolution of the other claims by setting parameters for damages for those claims." *See Capitol Indem. Corp. v. Dayton Bd. Of Educ.*, 492 F. Supp.2d 829, 839 (S.D. Ohio 2006).

duplicative efforts that could produce inconsistent results regarding Plaintiffs' claims that Defendant or RKM took or misused monies, a stay is warranted.

### B. Prejudice to Non-Moving Litigant

Even though Marshall has shown a need for a discretionary stay, she must also show that the stay would not prejudice the non-moving litigant unduly. *Asahi Glass,* 262 F. Supp.2d at 845. Marshall asserts that Plaintiffs would suffer no prejudice from the stay since the claims asserted in both the Arbitration and this action are intertwined

Plaintiffs claim they would be prejudiced because a stay will "delay their ability to recover against Ms. Marshall. The ability to recover only fairly would be delayed in the interests of economy and efficiency. The ability to recover, however, would not be denied by the delay, and Plaintiffs have not asserted that they would not be able to recover against Marshall at a later date.

Plaintiffs also assert they would be prejudiced because RKM Business is "likely judgment proof," "has no known assets" and any recovery "will likely be hollow." (Pl. Response pp. 2, 13). Plaintiffs then argue that they must be able to pursue Marshall in this litigation immediately.[3] Plaintiffs have not, however, supported their assertions that RKM Business is defunct. Marshall contends that RKM is an ongoing business concern with a staffed office and ongoing clientele. Furthermore, Marshall contends, it strains one's credulity that Plaintiffs would have paid the $8,000 arbitration filing fee, agreed to pay a $3,250 case service fee, and agreed to

---

[3]The court in *Asahi Glass* ruled that a stay is not appropriate when the interests the plaintiff seeks to protect can only be protected in the lawsuit and cannot be protected in the arbitration, even if that proceeding is resolved entirely in the plaintiff's favor. *See* 262 F. Supp. 2d at 845.

pay half of the fee for three arbitrators if Plaintiffs truly believed RKM Business was defunct. This Court agrees that Plaintiffs decision to pursue arbitration against RKM Business does not support their unsubstantiated allegation that RKM Business is judgment proof.

Plaintiffs finally claim they would be prejudiced because there would be a delay of discovery in this case. The AAA's Commercial Arbitration Rule L-4, however, allows the parties to conduct discovery in the arbitration. In fact, in the March 12, 2009 letter sent by the AAA to Plaintiffs and RKM regarding the arbitration, the Plaintiffs were encouraged to "begin their initial discovery requests in order to determine the process that will be needed once the arbitrators have been appointed." The Arbitration, therefore, affords Plaintiffs discovery regarding the same issues claimed in this case.[4]

Marshall has shown, therefore, that a stay of this matter is needed to avoid inefficiency and inconvenience to this Court and the litigants, and to avoid the risk of inconsistent results. Marshall has also shown that a stay of this matter would not result in hardship, prejudice, or inequity to Plaintiffs. In fact, both parties would be relieved of the burden of litigating claims in two different forums.[5]

---

[4]Plaintiffs also were not forced to incur the cost and expense of arbitration. If they truly believed RKM was judgment proof and that arbitration was not worth their time and effort, they could have solely pursued a claim against Marshall in this Court.

[5]This Court gives no credence to Plaintiffs' arguments regarding the pending related Delaware County suit. Plaintiffs intentionally clouded the title to the home in which Marshall lives, but which is owned by a Trust. The Trust, and not Marshall nor RKM, brought suit in Delaware Country, where the property is located, to remove the cloud on the title. That case does not impact the outcome of this case or the Arbitration.

## IV. CONCLUSION

For the foregoing reasons, this Court, in the exercise of its discretionary power, **GRANTS** Marshall's Motion and **STAYS** the proceedings pending arbitration of the claims against RKM Business.

**IT IS SO ORDERED.**

<u>s/ Algenon L. Marbley</u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: October 8, 2009**